JUDGE FRANK MONTALVO

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

FILED

2022 DEC -9   AM 10: 48

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY

| | |
|---|---|
| YAZMIN GONZALEZ, <br><br> **Plaintiff,** <br><br> **v.** <br><br> **JUMPSTART FINANCIAL, LLC,** a Texas Limited Liability Company, **ARNOLD & SMITH LAW, PLLC,** an Oklahoma Professional Limited Liability Company, <br><br><br> **Defendants.** | § § § § § § § § § § § § § § |

# EP22CV0455

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff is YAZMIN GONZALEZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant JUMPSTART FINANCIAL, LLC ("Jumpstart") is a limited liability corporation organized and existing under the laws of Texas and can be served via registered agent Frazer Law, P.C., 25511 Budde Rd. Suite 2801, The Woodlands, TX 77380.

3. Defendant ARNOLD & SMITH LAW, PLLC ("A&S Law") is a professional limited liability company organized and existing under the laws of Oklahoma and can be served via registered agent Arnold & Smith Law, PLLC, 115 East California Ave, Oklahoma City, OK 73104.

### JURISDICTION AND VENUE

4. **Jurisdiction.**  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. **Personal Jurisdiction.**  This Court has specific personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, derive revenue from soliciting their goods and services to Texas residents, including the Plaintiff.

6. **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted

in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

4

19.  Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d
    946, 951 – 52 (9th Cir. 2009).

20.  A corporate officer involved in the telemarketing at issue may be personally liable under the
    TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.
    LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate
    actors can be individually liable for violating the TCPA where they had direct, personal
    participation in or personally authorized the conduct found to have violated the statute."
    (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408,
    415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid
    individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code § 302.101**

21.  The Texas Business and Commerce code requires sellers to obtain a registration certificate
    from the Secretary of State in order to make telephone solicitations inside the state of Texas
    or to residents located in the state of Texas.

22.  The Plaintiff may seek damages for violations of Texas Business and Commerce Code §
    302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs,
    investigation costs, depositions expenses, witness fees, and attorney's fees.

23.  Texas Business and Commerce Code § 302.101 provides a private right of action.  A
    violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter
    E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by
    Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §
    302.303.

24.  The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

25. Plaintiff personally registered her phone number ending in -1859 on the National Do Not Call Registry successfully since March 2022.

26. Defendant Jumpstart offers dept elimination services to consumers who qualify for their program.

27. Defendant A&S Law is a law firm that is prohibited from making solicitation phone calls marketing their legal services.

28. Defendant A&S Law has contracted with Defendant Jumpstart to make solicitation phone calls on their behalf in violation of the American Bar Association, Texas State Bar Association, and Oklahoma State Bar Association prohibition against attorney solicitation.

29. Plaintiff received six (6) phone calls to her cell phone ending in -1859 from October 27, 2022, to October 31, 2022 without her prior expressed written consent and not related to any emergency purpose, from Defendant Jumpstart soliciting dept relief services on behalf of Defendant A&S Law.

30. On October 27, 2022, Plaintiff received the first phone call displaying phone number 307-448-6532 on the caller ID, there was a long pause before an audible "beep" and then connected to a telemarketer. The telemarketer did not properly identified the company she was calling on behalf of and was soliciting for dept relief, Plaintiff said she was not interested and disconnected the call.

31. On October 28, 2022, Plaintiff received three (3) additional calls, Plaintiff does not have dept and was annoyed by the calls so she pretended to be interested and impersonated to be a

coworker named "Mabel" who has debt, only for the sole purpose of identifying who was
behind the call.

32. Plaintiff was connected to the same telemarketer on paragraph 30. The telemarketer asked
Plaintiff about her depts, income, address and other personally identifiable questions then
tried to transfer however, the call dropped.

33. On October 31, 2022, Plaintiff received two (2) additional calls, Plaintiff answered one of the
calls with phone number 307-459-6693 it was the same telemarketer from paragraph 30. The
telemarketer tried transferring Plaintiff again, however, the call wouldn't connect. Therefore,
the telemarketer asked Plaintiff if she could call her to another phone number.

34. Plaintiff provided her phone number ending in -6609, the telemarketer called Plaintiff and
successfully transfer her to an agent who identified herself has "Lisa from Jumpstart."

35. Lisa from Jumpstart was soliciting Plaintiff for dept relief and asked qualifying questions.
Lisa sent Plaintiff a contract via email which revealed Defendants Jumpstart and A&S Law.

36. Table below displays calls made to Plaintiff by Defendants:

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 10/27/2022 | 4:01 PM | 307-448-6532 | Telemarketer soliciting |
| 2 | 10/28/2022 | 9:09 AM | 307-459-6693 | Missed call |
| 3 | 10/28/2022 | 2:35 PM | 307-448-3736 | Telemarketer soliciting |
| 4 | 10/28/2022 | 3:34 PM | 307-999-7908 | Said I was busy not to call |
| 5 | 10/31/2022 | 8:38 AM | 307-677-8558 | Missed call |
| 6 | 10/31/2022 | 8:59 AM | 307-459-6693 | Telemarketer asked for another number |

37. Plaintiff searched the Texas Secretary of State website
https://direct.sos.state.tx.us/telephone/telephonesearch.asp on December 5, 2022, and did not
find a valid Texas Solicitation Registration as required by Texas Business and Commerce
Code 302.101.

7

38. Defendants Jumpstart and A&S Law do not have solicitation registration certificates on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

39. Defendants Jumpstart and A&S Law do not qualify for an exemption under TX Bus. Com. Code 302.101.

40. Ms. Gonzalez has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

41. No emergency necessitated the calls.

## VICARIOUS LIABILITY OF DEFENDANT A&S LAW

42. Defendant A&S Law is vicariously liable for the telemarketing calls that generated the lead for them.

43. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

44. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

45. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

52. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual
relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if
the telemarketer "has apparent (if not actual) authority" to make the calls.  *Id.* at 6586 ¶ 34.

53. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's
liability requires a finding of formal agency and immediate direction and control over the
third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

54. To the contrary, the FCC—armed with extensive data about robocallers and Americans'
complaints about them—determined that vicarious liability is essential to serve the TCPA's
remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at
6587 ¶ 36.

9

55. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

56. Defendant A&S Law is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

57. Defendant A&S Law is prohibited from engaging in direct solicitation of perspective clients with whom they do not have a prior existing relationship. A&S Law is barred from conducting solicitation by both state and national bar association rules.

58. Defendant A&S Law hired Defendant Jumpstart with the explicit intent to violate state and national bar association rules prohibiting solicitation. A&S Law is violating bar association rules for economic profit and failure to hold them vicariously liable will undermine the bar association rules against solicitation.

59. Defendant A&S Law instructed Defendant Jumpstart on which states to target with phone calls and provided the minimum debt and income requirement to qualify for the program.

60. Defendants knowingly and actively accepted business that originated through illegal telemarketing.

61. Defendant A&S Law knew (or reasonably should have known) that Defendant Jumpstart was violating the TCPA on its behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

62. By hiring a company to make calls on their behalf, Defendant A&S Law "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

63. Moreover, Defendant A&S Law maintained interim control over the actions of Defendant Jumpstart

64. For example, Defendant A&S Law had absolute control over whether, and under what circumstances, it would accept a customer from Defendant Jumpstart.

65. Furthermore, Defendant A&S Law had day-to-day control over the actions of Defendant Jumpstart, including the ability to prohibit them from using an ATDS or prerecorded messages to contact potential customers of Defendant A&S Law and the ability to require them to respect the National Do Not Call Registry.

66. Defendant A&S Law also gave interim instructions to Defendant Jumpstart by providing lead-qualifying instructions and lead volume limits.

67. Defendant A&S Law donned Defendant Jumpstart with apparent authority to make the calls at issue.

68. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

69. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

70. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

71. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

72. Defendant A&S LAW is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant Jumpstart solicited Plaintiff for debt relief services.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

73. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

74. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

75. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

76. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

77. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

78. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to anger, frustration, and invasion of privacy.

**Plaintiff's cell phone is a residential number**

79. The calls were to Plaintiff's cellular phone ending in -1859 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code § 302.101**

80. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

81. Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

82. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code §

17.50.

83. Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

84. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

## I.        FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

1. Ms. Gonzalez realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

3. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

4. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## II.        SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

1. Ms. Gonzalez incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101,** by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3. Ms. Gonzalez is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

4. Ms. Gonzalez is entitled to all reasonable attorneys' fees, deposition costs, and discovery costs. **Texas Business and Commerce Code 302.302(d).**

### III.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yazmin Gonzalez prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for six (6 )calls;

E. An award of $5,000 in statutory damages arising from six (6) violations of the Texas Business and Commerce code 302.101;

F. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

G.  An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and

equity;

H.  Such further relief as the Court deems necessary, just, and proper;

December 9, 2022,                                    Respectfully submitted,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859